﻿Citation Nr: 18107541
Decision Date: 06/04/18 Archive Date: 06/02/18

DOCKET NO. 14-43 677
DATE: June 4, 2018
ORDER
Entitlement to service connection for left ear hearing loss is denied.
Entitlement to service connection for chronic mastoiditis is denied.
Entitlement to service connection for hypertension is denied.
FINDINGS OF FACT
1. The preponderance of the evidence of record is against a finding that the Veteran has, or has had at any time during the appeal, a current diagnosis of left ear hearing loss for VA purposes.
2. The preponderance of the evidence of record is against a finding that the Veteran has, or has had at any time during the appeal, a current diagnosis of chronic mastoiditis.
3. The preponderance of the evidence is against a finding that the Veteran’s hypertension began during active service, or is otherwise related to an in-service injury, event, or disease.
CONCLUSIONS OF LAW
1. The criteria to establish service connection for hearing loss of the left ear have not been met. 38 U.S.C. §§ 1110, 1112, 1113, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309, 3.385. 
2. The criteria to establish service connection for chronic mastoiditis have not been met. 38 U.S.C. §§ 1110, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304.
3. The criteria to establish service connection for hypertension have not been met. 38 U.S.C. §§ 1110, 1112, 1113, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307. 3.309. 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The issue of leukemia or a low blood count, and the issue of tinnitus, have been raised by the record in a July 2013 Veteran statement, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over these issues, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b). In particular, the Board notes that the Veteran was stationed at Camp Lejeune, and that leukemia is one of the diseases with a potential service-connection presumption under 38 C.F.R. § 3.309(f). See 38 C.F.R. § 3.307(a)(7). The Board also notes that, although the October 2012 and April 2013 VA examinations report that the Veteran denied tinnitus during the examinations, other medical records in the claims file document that the Veteran has reported tinnitus symptoms.
The Veteran had active service in the United States Marine Corps from January 1966 to January 1968, including service in the Republic of Vietnam.
These matters come before the Board of Veterans’ Appeals (Board) on appeal from an October 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO).
The Board notes that, when making his March 2012 initial claims for service connection, the Veteran specifically requested VA examinations. The VA’s duty to assist includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. See 38 U.S.C. § 5103A; 38 C.F.R. §§ 3.159(c)(4), 3.326(a); McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). With regard to the Veteran’s service connection claims for hypertension and chronic mastoiditis, no VA examinations were afforded to the Veteran to obtain medical opinions as to the origins of his claimed disabilities. The Board finds that as there is no evidence of a current disability or in-service incurrence for the Veteran’s claimed chronic mastoiditis, and no evidence of in-service incurrence for the Veteran’s claimed hypertension, examinations are not required here, even under the low threshold of McLendon.
The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Caluza v. Brown, 7 Vet. App. 498, 506 (1995). Equal weight is not accorded to each piece of evidence contained in the record, and every item of evidence does not have the same probative value. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Id. 
In adjudicating these claims, the Board has reviewed all of the evidence in the record on appeal. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss each and every piece of evidence, certainly not in exhaustive detail. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as deemed appropriate, and the Board’s analysis will focus specifically on what the evidence shows, or fails to show, concerning the claims.
Service Connection
The Veteran claims entitlement to service connection for left ear hearing loss, chronic mastoiditis, and hypertension.
Service connection may be established for a disability resulting from diseases or injuries that are clearly present in service. 38 U.S.C. §§ 1110; 38 C.F.R. § 3.303. Establishing service connection generally requires evidence of: (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship (nexus) between the claimed in-service disease or injury and the present disability. See, e.g., Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). 
Service connection may be granted for a disability diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury that was incurred or aggravated in service. 38 C.F.R. § 3.303.
Service connection may also be granted on a presumptive basis for chronic disabilities, such as sensorineural hearing loss or hypertension, if such is shown to have been manifested to a compensable degree within one year after the Veteran was separated from service. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. In addition, as an alternative to the nexus requirement, service connection for a chronic disability, such as sensorineural hearing loss or hypertension, may be established through a showing of continuity of symptomatology since service. 38 C.F.R. § 3.303(b). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). For a showing of continuity of symptomatology, however, the showing must still be made during the period of service or within one year after separation from service. 
1. Entitlement to service connection for left ear hearing loss 
The Veteran has claimed entitlement to service connection for left ear hearing loss. However, the available audiometric testing clearly demonstrates that the Veteran has no current diagnosis of hearing loss for VA purposes in his left ear.
Impaired hearing is considered a disability for VA purposes when: the auditory threshold in any of the frequencies of 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; the thresholds for at least three of those frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. Even though disabling hearing loss is not demonstrated at separation, a Veteran may establish service connection for a current hearing disability by submitting evidence that a current disability is causally related to service. Hensley v. Brown, 5 Vet. App. 155, 157, 159-60, 164 (1993) (also noting that the threshold for normal hearing is from 0 to 20 dB).
A January 1966 audiogram documents that the Veteran’s left ear hearing was normal on entry into service. Pure tone thresholds, in decibels, were as follows: 
 HERTZ 
 500 1000 2000 3000 4000
RIGHT 45 55 35 25 20
LEFT 0 0 0 0 0 
The induction Report of Medical Examination form has “Normal” checked for “Ears-General” and “Drums (Perforation).”
The Veteran’s December 1967 separation Report of Medical Examination form does not include an audiogram, but the form again has “Normal” checked for “Ears-General” and “Drums (Perforation).”
The claims file contains audiograms for the Veteran from January 1993, January 1994, and November 1999. There is no indication that these hearing examinations used the Maryland CNC speech discrimination test required by VA regulations, and therefore these test results are inadequate for VA purposes. 38 C.F.R. § 4.85. However, the Board notes that none of these three audiograms contradicted the findings in the Veteran’s other available audiograms by indicating a greater degree of left ear hearing loss.
In October 2012, the Veteran was afforded a VA examination for his hearing loss claim. Pure tone thresholds, in decibels, were as follows: 
 HERTZ 
 500 1000 2000 3000 4000
RIGHT 60 65 40 60 65
LEFT 5 0 0 10 35
Speech recognition with the Maryland CNC word list was 96 percent in the Veteran’s right ear, and 100 percent in the left.
The October 2012 VA examiner discussed the Veteran’s pertinent history, noting that the Veteran’s January 1966 induction audiogram showed normal hearing in the left ear, and that there was no evidence of complaints of left ear hearing loss in active service nor soon after release from service. She also noted that the Veteran reported ear surgery (mastoidectomy) in 1988. The VA examiner opined that, for both ears, the claimed hearing loss was not at least as likely as not caused by or a result of an event in military service, and stated further for the left ear that left ear hearing loss was not caused by or a result of the Veteran’s duties during active service. She also opined that left ear hearing loss was not aggravated beyond normal progression by service. 
In April 2013, the Veteran was afforded another VA examination for his hearing loss claim, by the same VA examiner. Pure tone thresholds, in decibels, were as follows: 
 
 HERTZ 
 500 1000 2000 3000 4000
RIGHT 60 65 40 60 65
LEFT 5 0 0 10 35
Speech recognition with the Maryland CNC word list was 96 percent in the Veteran’s right ear, and 100 percent in the left.
The April 2013 VA examiner discussed the Veteran’s pertinent history, including reviewing all audiological examinations of record, from 1966 to the present. She again opined that, for both ears, the claimed hearing loss was not at least as likely as not caused by or a result of an event in military service, and stated further for the left ear that left ear hearing loss was not caused by or a result of the Veteran’s duties during active service. She also opined that left ear hearing loss was not aggravated beyond normal progression by service. 
Turning to an analysis of the evidence, the available audiometric testing does not establish that the Veteran has, or has ever had, a hearing loss disability in his left ear for VA purposes. The Veteran’s audiometric tests for his left ear do not show: that the auditory threshold in any of the frequencies 500, 1000, 2000, 3000 or 4000Hz is 40 decibels or greater; or that the auditory thresholds for at least three of these frequencies are 26 decibels or greater; or that the Maryland CNC speech recognition scores are less than 94 percent. 38 C.F.R. § 3.385. Thus, although the Veteran asserts he has left ear hearing loss, the audiometric tests clearly show no current hearing loss disability in the left ear for VA purposes. Without competent evidence of a left ear hearing loss disability, there is no valid claim for service connection. Gilpin v. West, 155 F.3d 1353, 1356 (Fed. Cir. 1998); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The claim for service connection for left ear hearing loss must therefore be denied.
The Board notes that the Veteran is competent to report the current sensation of decreased hearing acuity. However, he is not competent to diagnose hearing loss or to opine that it meets the criteria for qualification as a disability for VA purposes. These assessments are not simple in nature and require specific audiometric testing. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (although the Veteran is competent in certain situations to diagnose a simple condition such as varicose veins, the Veteran is not competent to diagnose more complex medical questions).
Therefore, the evidence in this case is not so evenly balanced as to allow application of the benefit-of-the-doubt rule as required by law and VA regulations. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990). The preponderance of the evidence is against the Veteran’s claim, and as such entitlement to service connection for left ear hearing loss is denied. 
2. Entitlement to service connection for chronic mastoiditis
The Veteran has claimed entitlement to service connection for chronic mastoiditis. As noted, the first essential requirement for service connection is that the Veteran have a current disability. However, the available evidence of record does not establish that the Veteran has had a diagnosis of mastoiditis at any point during the appellate period (i.e., since he filed his initial claim in March 2012).
The available records indicate that the Veteran had mastoid surgery around 1987 or 1988, and records also document that, starting in 1987, the Veteran saw a private ear, nose and throat specialist, Dr. M., with some regularity over the years for mastoid surgery follow up and for various ear and other issues. May 1993 VA treatment records related to the Veteran’s heart issues note as part of his medical history that he had a history of chronic mastoiditis. A January 2014 Social Security Disability Determination letter from cardiologist Dr. R. notes under “Past History” that the Veteran had right mastoid surgery “many years ago.” The most recent Dr. M. records, two handwritten notes from November 2010 and May 2011, note pain on the left side of the face, including from left maxillary, and pain from the right ear cavity and GERD, for which omeprazole was recommended, but do not appear to mention a mastoiditis-related condition or symptom. 
Thus, although the Veteran has asserted that he has chronic mastoiditis, there is no available evidence that the Veteran has a current diagnosis of mastoiditis, within the appellate period. Without competent evidence of a current disability, there is no valid claim for service connection. Gilpin v. West, 155 F.3d 1353, 1356 (Fed. Cir. 1998); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The Board recognizes that the Court has held that the presence of a chronic disability at any time during the claim process can justify a grant of service connection, even where the most recent diagnosis is negative. McClain v. Nicholson, 21 Vet. App. 319 (2007); Romanowsky v. Shinseki, 26 Vet. App. 289 (2013) (recognizing disabilities that occur immediately prior to filing of a claim). However, where, as here, the weight of the medical evidence of record shows no current diagnosis of the disability at any time during or immediately preceding the claim or appeal period, the holdings of McClain and Romanowsky are of no advantage to the Veteran. Accordingly, the claim for service connection for a chronic mastoiditis disability on a direct service connection basis must be denied.
In addition, even if the Veteran were assumed to have a current diagnosis of chronic mastoiditis, thereby meeting the first required element for service connection, the evidence of record still would not establish the other two elements required for service connection, i.e., an in-service incurrence or aggravation of a disease or injury, and a causal relationship (nexus) between the claimed in-service event and the present disability. The Veteran’s service treatment records (STRs) contain no mention of any diagnosis of or treatment for mastoiditis or potentially related symptoms. There is no record in the available claims file documenting that the Veteran had mastoiditis until 1987, almost 20 years after his 1968 separation from service. Although the Veteran stated in his March 2012 Application for Compensation and/or Pension that his mastoiditis began during his 1966 to 1968 service, he has made no other statement regarding onset of his mastoiditis, symptoms during service, or how his later development of mastoiditis was related to his service. The available record contains no indication of a medical or lay opinion or explanation linking the Veteran’s mastoiditis to service in any way. 
Thus, the available evidence also fails to establish both the second and third required elements for service connection. There is no evidence that there was any in-service incurrence or aggravation of a disease or injury, and no evidence of a causal relationship (nexus) between the claimed in-service incurrence or aggravation and a present disability. 
Therefore, the evidence in this case is not so evenly balanced as to allow application of the benefit-of-the-doubt rule as required by law and VA regulations. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990). The preponderance of the evidence is against the Veteran’s claim, and as such entitlement to service connection for chronic mastoiditis is denied.
3. Entitlement to service connection for hypertension
The Veteran has claimed entitlement to service connection for hypertension. The Veteran’s 2012 VA treatment records document that the Veteran has had a diagnosis of hypertension within the appellate period. Thus, the first element necessary to establish a service connection, a current disability, is met. We next turn to the other two elements required for a service connection, an in-service incurrence or aggravation of a disease or injury, and a causal relationship (nexus) between the claimed in-service disease or injury and the present disability.
The Veteran’s April 1965 “Pre-Induction” Report of Medical Examination reports a blood pressure reading of 124/70, with “Normal” checked for Vascular System. His January 1966 “Reexamination” Report of Medical Examination, dated the day before his official induction into service, reports a blood pressure reading of 140/82, with “Normal” checked for Vascular System. The Veteran’s December 1967 discharge Report of Medical Examination reports blood pressure of 118/88, with “Normal” checked for Vascular System. 
The Veteran’s STRs contain no other mentions of blood pressure readings, and contain no indication of related problems, signs, diagnosis or treatment of hypertension.
Post-service, there are no available records indicating that the Veteran sought treatment for hypertension or related signs or symptoms within one year after separation from service. 
May 1993 VA treatment records related to the Veteran’s heart issues note that he has hypertension (possibly based on the Veteran’s own report), but without detail. Similarly, a private January 1994 audiology report notes under medical history that the Veteran is hypertensive (apparently based on the Veteran’s own report), but without detail. VA Renal Note treatment records from January 2012 and other dates in 2012 note that the Veteran has hypertension of 18 years’ duration, which would indicate a possible onset date of around 1994. Thus, the available records indicate that the Veteran had hypertension approximately 25 years after separation from service in 1968, but there are no available records demonstrating that the Veteran developed hypertension closer to his separation date.
In addition, the available record contains no indication of a causal link (nexus) between the Veteran’s current hypertension and his service. There is no medical opinion finding or even mentioning a possible nexus, and there are no lay statements indicating a nexus. Although the Veteran stated in his March 2012 Application for Compensation and/or Pension that his hypertension began during his 1966 to 1968 service, he has made no other statement regarding onset of his hypertension, symptoms during service, or how his later development of hypertension was related to his service. 
In sum, although the Veteran has a current diagnosis of hypertension, satisfying the first required element for service connection, the evidence of record fails to establish the other two required elements for service connection, an in-service incurrence or aggravation of a disease or injury, and a causal relationship (nexus) between the claimed in-service disease or injury and the present disability. The available evidence does not demonstrate that there was any in-service issue with hypertension or related symptoms, and there is no evidence indicating any nexus between the Veteran’s current hypertension and service, especially since the first documented mention of hypertension in the available records was 25 years after separation from service. Thus, the Board finds that the Veteran’s claim for service connection for hypertension on a direct service connection basis must be denied.
In addition, because there is no evidence that the Veteran’s hypertension manifested within one year of his separation from service, the presumptive service connection provisions for chronic diseases under 38 C.F.R. § 3.307(a)(3) do not apply. See also 38 C.F.R. § 3.309(a).
Therefore, the evidence in this case is not so evenly balanced as to allow application of the benefit-of-the-doubt rule as required by law and VA regulations. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990). The preponderance of the evidence is against the Veteran’s claim, and as such entitlement to service connection for hypertension is denied.
 
LESLEY A. REIN
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD J. Coogan, Associate Counsel